United States District Court
Southern District of Texas
**ENTERED**
December 22, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MARIA D. TORRES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:20-CV-221 |
| | § | |
| ATLAS CREDIT CO., INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL MANDATORY ARBITRATION AND STAYING CASE PENDING ARBITRATION**

## I. Factual and Procedural Background

Now before the Court is the Motion to Compel Mandatory Arbitration (Dkt. No. 4) filed by Defendant Atlas Credit Company ("Atlas" or "Defendant"). Maria Torres ("Torres" or "Plaintiff") originally filed suit against Atlas on July 2, 2020 in the County Court at Law No. 4 in Hidalgo County, Texas. Dkt. No. 1, Ex. E. Atlas was served on July 14, 2020 and removed to this Court on August 12, 2020 on the basis of federal question jurisdiction. *See* Dkt. No. 1 at ¶¶ 3, 5; 28 U.S.C. §§ 1331, 1441, 1446.

Torres's employment with Atlas was terminated in February of 2019. Dkt. No. 1, Ex. E at ¶ 5.4. Torres alleges that Atlas discriminated against her on account of her age and/or for engaging in protected activity by participating in a sexual harassment investigation. Dkt. No. 1, Ex. E at ¶ 5.2. This discrimination, Torres alleges, was in violation of the ADEA, Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act. *Id.*, Ex. E. at ¶ 5.5. Defendant moves to compel arbitration of all of Plaintiff's claims on the asserted basis that the claims are subject to a mandatory arbitration clause in the "Arbitration Agreement" entered into by Plaintiff in connection with her employment. Dkt. No. 4, Ex. A. Torres's response

challenges only the validity of the arbitration agreement, not the applicability of the agreement to these specific claims. *See* Dkt. No. 9 at 3. Upon consideration of the Motion, the parties' responsive briefing, and in light of the relevant law, the Court finds that the Motion should be granted and the case stayed pending arbitration, for the following reasons.

## II. Authority

The evidentiary standard for a motion to compel arbitration is essentially the same as for a summary judgement. *In Estate of Guerrero*, 465 S.W.3d 693, 703 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *In re Jebbia*, 26 S.W.3d 753, 756 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding)). A clause requiring arbitration is interpreted under state-law contract principles, and the language contained within will be enforced according to its plain meaning unless this would defeat the intention of the parties. *Pepe Int'l Dev. Co. v. Pub. Brewing Co.*, 915 S.W.2d 925, 930 (Tex.App.—Houston [1st Dist.] 1996, no writ.); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern contracts."). Therefore, Texas law is applicable here.

In evaluating whether to compel arbitration, the court must determine: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the claims fall within the scope of that agreement. *ASQ Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co*, 188 F.3d 307, 311 (5th Cir. 1999) (applying Texas law to the arbitration agreement); *see also Ruedemann v. Energy Operators, Inc.*, 198 F. Supp. 2d 894, 897 (S.D. Tex. 2002) (same). If this is established, the burden shifts to the party opposing arbitration to provide a valid defense to the enforcement of the agreement. *Briseno v. Cricket Inv., Ltd.*, No. M-09-59, 2009 WL 10711259, at *3 (S.D. Tex Sept. 21, 2009) (Crane, J.) (citing *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 856

(Tex.App.—Houston [14 Dist.] 2007, orig. proceeding [mand. denied])). Courts should not invalidate an agreement to arbitrate "absent compelling reasons of law or equity for the revocation of a contract, like fraud or unconscionability." *Leyva v. J.B. Hunt Transp., Inc.* No. H-08-1019, 2008 WL 4068160, at *2 (S.D. Tex. Aug. 29, 2008) (citing TEX. CIV. PRAC. & REM. CODE § 171.001; *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex. App.—Houston [1st Dist.] 1996, no writ)).

## III. Validity of the Arbitration Agreement

Under the Texas Arbitration Act (TAA), an arbitration agreement needs to be written and agreed to by the parties in order to be enforceable. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (citing 9 U.S.C. § 3; TEX. CIV. PRAC. & REM. CODE § 171.001(a); *In re Halliburton Co*, 80 S.W.3d 566, 569 (Tex. 2002)). Atlas provides evidence that Torres agreed to employment and on September 20, 2003 signed a written Arbitration Agreement ("Agreement") containing the following language:

> Arbitration Agreement
>
> Atlas Credit Co., Inc. hereinafter called employer, and the undersigned employee, hereby agree that the employer, whose representative has signed below, and the employee, whose signature appears below, agree to arbitrate any despites [sic] arising between them as provided by Chapter 171 General Arbitration of the Texas Civil Practice and Remedies Code. Employee's portion of arbitration fees will be limited to the cost to file suit and serve each defendant but no more than $250.00.

Dkt. No. 4, Ex. A. The Agreement was signed by a representative of Atlas and by Plaintiff. Under Texas law, "the fact that a party has signed a contract creates a 'strong presumption' that the party has assented to the terms of an agreement." *Wright v. Hernandez*, 469 S.W.3d 744 (Tex.App.—El Paso 2015) (citing *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208–10 (Tex.App—El Paso 2004, orig. proceeding); *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests assent by signing an agreement.")).

Despite the Agreement being in writing and signed by her, Torres argues the Agreement is nonetheless invalid for a number of reasons. Dkt. No. 9 at 3. First, Torres claims that because her attorney did not also sign the Agreement, it is invalid under § 171.002 of the Texas Civil Practice and Remedies Code.[1] Torres further alleges several contract-law defenses such as lack of consideration, duress, and indefiniteness of terms. Dkt. No. 9 at 5. Lastly, she claims that if the Agreement is valid, it is nevertheless unenforceable because it is unconscionable and deprives her of a forum in which to effectively vindicate her rights. *Id.* at 8.

**A. Applicability of Texas Civil Practice and Remedies Code § 171.002**

Section 171.002 provides that in certain circumstances, special requirements must be met for a claim to be subject to arbitration under the Texas Arbitration Act (TAA). Namely that "(1) each party to the claim, on the advice of counsel, agree[] in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." TEX. CIV. PRAC. & REM. CODE § 171.002. This requirement only applies to claims of personal injury and "agreement[s] for the acquisition by one or more individuals of property, services, money, or credit in which the total consideration to be furnished by the individual is not more than $50,000." *Id.* Plaintiff has not briefed into which category her claims allegedly fall. *See* Dkt. No. 9 at 1–2. Plaintiff's counsel has argued during a hearing, however, that § 171.002 is applicable because Torres's claims are claims for personal injury. *See* Dkt. No. 11 at 2. Texas courts have interpreted the "personal injury" language in § 171.002 to be limited to physical personal injury. *Chambers v. O'Quinn*, 305 S.W.3d 141, 148 (Tex.App.—Houston [1st Dist.] 2009, pet. denied) (citing *Taylor v. Wilson*, 180 S.W.3d 627, 631 (Tex.App.—Houston [14th Dist.] 2005, pet. denied) (examining the legislative history of § 171.002 and finding "no room for doubt in the legislature's intent to

[1] Plaintiff's Response to the Motion to Compel references § 171.021(b)(2) and (c)(2), but there is no (b)(2) or (c)(2) in § 171.021 of the Texas Civil Practice and Remedies Code. *See* Dkt. No. 9 at 1–2. The Court understands the correct section to be 171.002, which is the section Plaintiff provides in full on pages 1 and 2 of her Response. *See id.*

restrict the meaning of the personal injury exception of the [TAA] to physical personal injury”)).

Plaintiff's claims in this case center around alleged discrimination, not physical injury. *See* Dkt. No. 1, Ex. E. at ⁋ 5.5. The only possible claim Torres presents that could be argued is one for “personal injury” is her damages claim for past and future mental anguish. Dkt. No. 1, Ex. G at ⁋ 7.4. This mental anguish claim, however, is not a claim for *physical* injury. As a result, the attorney-signature requirement is not applicable to the claims in this case and the lack of an attorney signature does not invalidate the Agreement.

**B. Consideration**

Consideration is a fundamental element of any valid contract. *Briseno*, 2009 WL 10711259, at *3. “In Texas, the surrender of a legal right constitutes valid consideration.” *Id.* (quoting *In re Alamo Lumber Co.*, 23 S.W. 3d 577, 579 (Tex. App.—San Antonio 2000, no pet.)) (internal quotations omitted). A mutual agreement to surrender the right to litigate claims before a jury constitutes consideration supporting an agreement to arbitrate. *Id.* (citing *In re Alamo Lumber Co.*, 23 S.W. 3d at 579).

Torres argues that the Agreement is invalid because she was an at-will employee who did not provide any non-illusory consideration. Dkt. No. 9 at 3. To the extent Torres's argument is premised on her at-will status preventing the formation of a valid agreement, it fails. Courts, including this one, have held that “at-will employment does *not* preclude the formation of other contracts between employer and employee,” including arbitration agreements. *Briseno*, 2009 WL 3483009, at *4 (citing *In re Jebbia*, 26 S.W.3d at 756) (emphasis in original). Here, Torres and Atlas both gave valid consideration by surrendering their rights to a jury trial. The language of the Agreement indicates that both parties agreed to arbitrate any disputes between the two. Dkt. No. 4, Ex. A. This promise is mutual and therefore not illusory. *See id.* at *3 (citing *In re Alamo*

*Lumber Co.*, 23 S.W. 3d at 579 ("Since the parties surrendered their rights to trial by jury, these mutual promises supply valid consideration.")).

**C. Duress**

Duress is an affirmative defense to contract validity. *See Amateur Athletic Union of the U.S., Inc. v. Bray*, 499 S.W.3d 96, 103 (Tex. App.—San Antonio 2016, no pet.) (listing duress as a contract-validity defense). "While there are several applications and definitions of duress, '[a] common element of duress in all its forms . . . is improper or unlawful conduct or threat of improper or unlawful conduct that is intended to and does interfere with another person's exercise of free will and judgment." *Weinberg v. Baharav*, 553 S.W.3d 131, 134 (Tex. App.—Houston [14th Dist.], no pet.).

Torres argues that "the arbitration agreement is one of 'adhesion' and [she] was acting under duress when she signed because she was in an inferior bargaining position." Dkt. No. 9 at 5. This argument does not support a conclusion that Torres was acting under duress when she signed the Agreement. Courts allow employers to make arbitration a mandatory condition of employment. *See e.g.*, *Carson v. Higbee Co.*, 149 Fed.Appx. 289, 293 (5th Cir. 2005) (holding an arbitration agreement notifying the employee that continued employment would constitute acceptance was not a contract of adhesion); *In re Halliburton Co.*, 80 S.W.3d at 572–73 (holding an arbitration agreement to be valid where the company mandated the employee sign it to continue in the company's employ). The fact that Torres was in an inferior bargaining position is not enough to satisfy her burden of showing duress.

**D. Deprivation of Substantive Rights**

An arbitration agreement must provide a forum for plaintiff to "effectively . . . vindicate [her] statutory cause of action"—"an adequate substitute for a judicial forum in protecting the

particular statutory right at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991); *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 763 (5th Cir. 1999). "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Torres claims that submission of her claims to arbitration would deprive her of an equivalent and accessible forum in which to effectively prosecute her claims. Dkt No. 9 at 8–10. However, because the terms of the Agreement do not provide specifics about the procedures to be used, Torres admits she has insufficient information to determine the ways in which the Agreement may thwart her attempts to vindicate her rights. *Id.* at 8–9. Relatedly, Torres claims the Arbitration Agreement is unenforceable because it omits essential terms. She points out the failure of the Agreement to specify the procedures to be used in conducting the arbitration, what discovery or evidence rules will apply, and whether the proceedings will be "of record." Dkt. No. 9 at 7. Courts, including this one, have often held agreements lacking details like these to be enforceable. *See Briseno*, 2009 WL 10711259 at *6. Should the procedures chosen limit Plaintiff's rights, she is free to file a motion to reconsider this Order.

**E. Unconscionability**

Unconscionable contracts, including arbitration agreements, are unenforceable under Texas law. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). "Unconscionability is . . . determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided. *Id.*

Torres seems to suggest the Agreement is unconscionable because of a lack of definiteness as to the terms of arbitration and an inequality in bargaining power. Dkt. No. 9 at 6

(italicizing the words "*convoluted language*" and "*inequality in bargaining power*" when defining procedural unconscionability). As discussed in the sections above, neither the language of the Agreement nor the at-will relationship between Torres and Atlas affect the validity of the Agreement in this case. *See In re Halliburton Co.*, 80 S.W.3d at 572–73 (Tex. 2002) (holding that an arbitration agreement was not unconscionable where the company mandated the employee sign it to continue in the company's employ). The evidence provided by Plaintiff does not support a finding of unconscionability.

**IV. Conclusion**

For the foregoing reasons, the Court finds the Arbitration Agreement to be a valid, binding agreement. The Agreement was recorded in writing, assented to by both parties when they signed the document, and none of the evidence supports a finding that the Agreement should not be enforced. Accordingly, the Court hereby **ORDERS** that Defendant's Motion to Compel Mandatory Arbitration is **GRANTED,** and this action is **STAYED** pending arbitration. At the conclusion of the arbitration, the parties are to promptly notify the court so that a judgment may be entered in conformance with the arbitration results. In the interim, this matter will be administratively closed.

SO ORDERED this 22nd day of December, 2020, at McAllen, Texas.

Randy Crane
United States District Judge